# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SEED RESEARCH EQUIPMENT
SOLUTIONS, a Kansas Limited Liability
Company,

   *Plaintiff,*

 vs.            Case No. 09-0182-EFM-KGG

GARY W. CLEM, INC. d/b/a ALMACO, an
Iowa Corporation,

   *Defendant.*

## MEMORANDUM AND ORDER

   This case arises out of a patent dispute between Seed Research Equipment Solutions, LLC ("SRES") and Gary W. Clem, Inc., d/b/a ALMACO ("ALMACO"). The patent at issue is U.S. Patent No. 6,505,124 ("the '124 patent"), entitled "GPS System to Provide Planter Tripping for Crop Research Plots." ALMACO is the '124 Patent holder. Before the Court is SRES's Motion for Summary Judgment (Doc. 142) that the '124 Patent is invalid under 35 U.S.C. § 102(b). SRES contends that, even if the Court accepts ALMACO's claim construction in whole, claim one and claims three through ten of the '124 Patent are invalid because the invention embodied in those claims was in public use or offered for sale more than one year before the '124 Patent's application date. The Court denies SRES's motion with respect to claim one because SRES has not met its burden to show anticipation of each limitation within that

claim.  The Court grants SRES's motion with respect to claims three through ten because the invention embodied in those claims was in public use more than one year before the '124 Patent's application date.

## I.        Factual and Procedural Background[1]

### A.       The '124 Patent

The '124 Patent was issued on January 7, 2003, and claims priority as a continuation in part to Application No. 09/430,973 filed November 1, 1999, which was abandoned, and to provisional Application No. 60/169,067, filed on December 6, 1999.  The '124 Patent teaches a system for planting seed research plots.  Previous planting systems required the use of a cable that stretched across a field before planting.  The cable was heavy and difficult to move across the field, resulting in a labor-intensive and time-consuming planting system.

The planting system taught by the '124 Patent eliminates the need for the cable.  This system uses a GPS mounted to a planter and connected to a computer, which signals the planter when to start and stop planting the research plot.  The '124 Patent generally describes the invention as follows:

> A GPS receiver will provide the longitude and latitude of the first trip location and provide a continuous flow of location information.  A control computer will calculate the next tripping location and provide a signal to the planter at that location and each subsequent tripping location in the field grid.

> The GPS receiver will be mounted on the planter to provide location information. When the first plot is manually tripped the computer will use vector information and determine the next tripping location. [2]

---

[1]    In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

[2]    '124 Patent, Doc. 1-2, p. 6.

At issue in SRES's motion are claim one and claims three through ten of the '124 Patent.  Of these, claims one and three are independent claims and claims four through ten are dependent claims that depend on claim three.  Claim one reads as follows:

> 1.  A method of planting field seeds in a test plot field comprising a plurality of plots with a plurality of parallel seed rows wherein a plurality of plots are separated into parallel ranges comprised of a plurality of side by side plots, with the ranges being separated by parallel alleys extending at right angles to the seed rows, comprising,
>
> using a multi-row planter capable of simultaneously planting field seeds in a plurality of parallel rows,
>
> positioning the planter in a corner of a substantially rectangular field to be planted and heading the planter in a direction to plant a plurality of plots in a longitudinal direction along one side of a field,
>
> placing a GPS device on the planter and operatively connecting the same to a computer,
>
> predetermining the length of a longitudinal vector comprising the distance between centerlines of two adjacent alleys,
>
> providing a trigger mechanism on the planter to deposit field seeds in the soil of the field in the location of each of the rows, and to withhold the deposit of seeds in the alleys,
>
> taking a GPS reading on an end point of beginning on the end of a first set of vectors extending along the rows in a first plot,
>
> moving the planter longitudinally through the field in the direction of the rows to plant the first tier of plots,
>
> continuously gathering GPS data from the GPS device and feeding the same to the computer while the first plot is being planted,
>
> and [sic] causing the computer to automatically and intermittently cause the planter to plant seed and to stop planting seed as the planter progresses longitudinally through the field as the GPS data advises the computer that the planter has traveled a predetermined distance, with the GPS device providing data to the computer both as to the distance and the direction traveled by the planter, so that seeds will be planted in the rows of the plots of the first tier of plots without planting seeds in the alleys between those plots, and

-3-

sequentially moving the planter longitudinally through the field to similarly plant additional tiers of plots parallel to the first tier of plots.[3]

Claim three states:

3. A method for triggering a seed planter to establish a plurality of field seed test plots, comprising,

positioning the seed planter at a corner of the area to be planted,

establishing the position of the planter when the planter is tripped to start or stop planting seeds,

recording the initial position of the planter and establishing the position of the planter when the planter is tripped to start or stop planting seeds,

moving the planter across a field that is to be planted,

switching the planter on or off to deposit or stop depositing seeds,

reversing the direction of the planter such that the planter faces in the direction opposite to the initial path across the field such that the planter is disposed to a return path so that the edge of the first path is contiguous to the edge of the return path,

calculating start locations and stop locations for the planter to start or stop planting seeds, moving the planter across the field on the return path,

automatically tripping the planter to start planting seeds such that as the planter passes contiguous to an area planted on the previous path the seed planter is switched on,

automatically tripping the planter to stop planting seeds such that as the planter passes contiguous to an area where no seeds were planted on the previous path the planter is switched off, and

whereby on each consecutive pass across the field a pattern is created of plots with planted seeds and intervening alleys with no seeds.[4]

Claims four through ten state:

---

[3]     *Id*. at 6-7.

[4]     *Id*. at 7.

4. The method in claim 3, wherein the location of said planter is established via a precision location means for precision location operatively associated with the planter.

5. The method in claim 4, wherein the precision location means utilizes [sic] signals is selected from the group consisting of GPS, radio, microwave, sonar, radar and laser.

6. The method in claim 3, wherein the location of said planter is established via a precision location device operatively associated with the planter.

7. The method in claim 3, wherein the position of said planter is recorded via a data recording means operatively connected to the precision location means.

8. The method in claim 3, wherein said planter is tripped to start or stop planting seeds while the planter is moving across the field.

9. The method of claim 3, wherein the start or stop planting seed locations of the planter are calculated.

10. The method of claim 3, wherein said planter is tripped to start or stop planting seed for automatically controlling the seed planter operatively connected to the computation means.[5]

**B.      The HarvestMaster System**

SRES contends that an unrelated third party, Ron Campbell, created a planting system

that performs the methods claimed in the '124 Patent at least one year before the '124 Patent's

application date.      Specifically, SRES alleges that Campbell, through his company

HarvestMaster, Inc., sold a system for planting research plots using GPS signals to start and stop

planting to Cargill Seed Research ("Cargill") in April 1997 for $34,360 (the "HarvestMaster

System").  Campbell worked with Wintersteiger (a planter manufacturer) and Cargill employees

to develop the software for the HarvestMaster System and reduced the software to practice by

---

[5]      *Id*. at 7.

April 16, 1998.  The HarvestMaster System was used to plant Cargill's Seward, Nebraska, research fields in the spring and summer of 1998.

A report entitled "1998 Wintersteiger/GPS Report From Seward Corn Research" (the "Wintersteiger Report") describes the results of the planting using the HarvestMaster System in Cargill's fields in 1998.  According to the Report, the HarvestMaster System was used to plant the research plots in Seward, Nebraska, and the HarvestMaster System performed well with impressive results.  The Wintersteiger Report also describes several problems encountered when planting with the HarvestMaster System, including that the GPS would not stay in the correct phase differential, the alleys between the plots were staggered, and double trips occurred during planting.

In August and September 1998, the manufacturer of the GPS sensor used in the HarvestMaster System, Leica Geosystems, created a brochure for the MC1000 (the GPS) that included the work performed by HarvestMaster, Cargill, and Wintersteiger.  The brochure contains the following statement: "This past spring at Cargill, with the support of Wintersteiger, we were able to abandon the infamous planting cable, in lieu of very high precision GPS RTK coordinates provided by MC1000."  According to the Declaration of Rod Eckels, a Leica Geosystems employee, this brochure was to be distributed to Leica's other offices and shared with potential customers.  Eckels also presented at the 11th International Technical Meeting of the Satellite Division of The Institute of Navigation (ION GPS 1998) on September 15 through 18, 1998 in Nashville, Tennessee, regarding the MC1000 and the projects that had been used

with the MC1000.  Eckel's PowerPoint presentation contained a slide regarding the MC1000's application in agriculture that stated that it had been used in "seed planting."[6]

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[7] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[8]  A fact is "material" when "it is essential to the proper disposition of the claim."[9]  The Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion for summary judgment under consideration.[10]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[11]  If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[12]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[13] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts,

---

[6]     Eckel's Declaration, Doc. 142-6, p. 20.

[7]     Fed. R. Civ. P. 56(a).

[8]     *Haynes v. Level 3 Commc'ns,* LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[9]     *Id.*

[10]     *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11]     *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[12]     *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[13]     *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

or specific exhibits incorporated therein."[14]   Conclusory allegations alone are insufficient to defeat a properly supported motion for summary judgment.[15]   The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[16]

### III.   Analysis

The determination of a patent's validity under section 102(b) is a question of law based on the underlying facts.[17]   A patent is presumed valid.[18]   Therefore, to prevail on its claim of invalidity, SRES bears the burden of going forward and persuasion and must prove invalidity by clear and convincing evidence.[19]

SRES contends that claim one and claims three through ten of the '124 Patent are invalid under 35 U.S.C. § 102(b) because they were either publicly used or offered for sale more than one year before the '124 Patent's application date through the alleged public use and sale of the HarvestMaster System by Ron Campbell.  Under 35 U.S.C. § 102(b), a patent is invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on-sale in this country, more than one year prior to the date of the application for patent in the United States."[20]   A bar under section 102(b) arises when the claimed invention is in public use or on-sale before the critical date.[21]   The critical date is "one year prior to the date of

---

14    *Adler*, 144 F.3d at 671.

15    *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

16    *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

17    *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 829 (Fed. Cir. 1991).

18    35 U.S.C. § 282(a).

19    *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761 (Fed. Cir. 1995).

20    35 U.S.C. § 102(b).

21    *Invitrogen Corp. v. Biocrest Mfg. L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005).

the application for patent in the United States."[22]   For purposes of SRES's motion, the parties

have agreed that the critical date is November 1, 1998.

Section 102(b) requires more than just a showing that the claimed invention was in public

use or on sale before the critical date.   It also requires that the device offered for sale or used in

public anticipates the claimed invention.[23]   The Court of Appeals for the Federal Circuit has held

that "the first determination in the § 102(b) analysis must be whether the subject of the barring

activity met each of the limitations of the claim, and thus was an embodiment of the claimed

invention."[24]   Therefore, to prevail under either its public use or on-sale bar theories, the first

thing SRES must show is that the HarvestMaster System contains each limitation of claim one

and claims three through ten of the '124 Patent.

### A.      Anticipation of Claim One and Claims Three through Ten of the '124 Patent

Section 102(b) bars patentability by anticipation if the device used in public or offered

for sale contains every limitation of the later claimed invention.[25]   Anticipation requires strict,

and not substantial, identity.[26]   An invention is anticipated if all of the elements of the invention

as stated in the claims are disclosed expressly or inherently within a single prior art reference.[27]

Because SRES has accepted ALMACO's proposed claim construction for purposes of this

---

[22]     *Orion IP, L.L.C. v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010).

[23]     *Dana Corp. v. Am. Axle & Mfg.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) (vacated on other grounds).

[24]     *Scaltech Inc. v. Retec/Tetra*, 178 F.3d 1378, 1383 (Fed. Cir. 1999).

[25]     *Id.*; *Zenith Electronics Corp. v. PDI Commun. Sys.*, 522 F.3d 1348, 1356 (Fed. Cir. 2008).

[26]     *Trintec Industries, Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1296-97 (Fed. Cir. 2002); *see also* 1-3 Donald S. Chisum, Chisum on Patents § 3.02(b) (Matthew Bender) ("Federal Circuit decisions repeatedly emphasize that anticipation (lack of novelty) is established only if (1) all the elements of an invention, as stated in a patent claim, (2) are identically set forth, (3) in a single prior art reference.").

[27]     *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) (citations omitted).

motion, SRES must show that each limitation of claim one and claims three through ten of the '124 Patent, as they are construed according to ALMACO, are disclosed within the HarvestMaster System.[28]

      SRES has submitted a claim chart that allegedly shows how each limitation of claim one and claims three through ten are found within the HarvestMaster System.  In response, ALMACO makes the general argument that the claim chart is incomplete because it only discusses a portion of claim one and ignores claims three through ten.  The Court has reviewed the chart and finds that it is complete with respect to claim one and claims three through ten.  However, with respect to claim one, the Court finds that SRES has not met its burden to show that each claim limitation is anticipated by the HarvestMaster System.

      Claim one comprises a method that requires the step of "predetermining the length of a longitudinal vector comprising the distance between centerlines of two adjacent alleys."[29] ALMACO states that no construction is necessary for this claim language but states that this language requires predetermining the length from the center of one alley to the center of another alley in the research field.  ALMACO argues that the statement from Campbell's Declaration that SRES relies on to show that this claim limitation has been met is insufficient because it only discusses how the software knows the plot length, not the vector length.  The Court agrees. SRES's evidence only states that the software used in the HarvestMaster System uses the plot

---

[28]    The Court recognizes that SRES made a passing reference in its opening brief to the proposition that complete identity is not required under section 102(b) if the difference between the device and claimed invention would have been obvious to a person with ordinary skill at the time.  SRES's Motion for Summary Judgment, Doc. 142, p. 15.  Obviousness, however, is a determination under 35 U.S.C. § 103.  To the extent SRES, seeks to invalidate the '124 Patent based on obviousness in conjunction with section 102(b), SRES has not explained this legal theory in its brief.  Nor has SRES argued that claim one and claims three through ten are obvious by the HarvestMaster System.  Accordingly, the Court will only determine whether the claim one and claims three through ten are invalid by anticipation under 35 U.S.C. § 102(b).

[29]    '124 Patent, Doc. 1-2, p. 7.

length, field length, and field width to determine when to start and stop planting the research plots.  There is no evidence that shows the HarvestMaster System predetermines the length between the centerline of each alley.  Accordingly, the Court finds that the HarvestMaster System does not anticipate claim one of the '124 Patent.

With regard to claim three, the parties dispute whether the HarvestMaster System contains the following claim limitation: "automatically tripping the planter to stop planting seeds such that as the planter passes contiguous to an area where no seeds were planted on the previous path the planter is switched off."[30]  ALMACO states that no construction is necessary for this claim limitation.  ALMACO argues that SRES has not shown this claim limitation because one can't tell from the May 1998 videos whether the planting was stopped in a contiguous area to where no seeds had been planted and none of SRES's witnesses stated that planting was automatically stopped in a contiguous area to where no seeds had been planted.  It also argues that the Wintersteiger Report indicates that this claim limitation was not met because it states that the alleys were staggered.

The Court finds that this claim limitation is disclosed by the HarvestMaster System. Campbell's December 13, 2011, Declaration states that he developed the software to control the planter, which starts and stops the seeding, based on signals it received from the GPS. Campbell's Declaration also states:

> Knowing the field baseline and plot lengths, the software calculated the start/stop position for each range of plots, and whenever the planter position crossed into a new plot, the planter was tripped to plant the next variety in the seed packet chain. In other words, the planter would automatically plant based upon the RTK GPS and the signals generated from our software.[31]

---

[30]   *Id.*

[31]   December 13, 2011, Campbell Declaration, Doc. 142-3, p. 4.

Based on this language, the HarvestMaster System included the step of automatically tripping the planter to stop planting seeds.  Furthermore, while the Wintersteiger Report states that the alleys were staggered, it also states that the planting was successful and that there was a two to three inch variance between the alleys.  The claim language does not require any specific degree of accuracy between the alleys.  The fact that alleys were created during the May 1998 planting shows that the HarvestMaster System performed this claim limitation.

ALMACO also argues that the HarvestMaster System does not meet the following limitation from claim three: "recording the initial position of the planter and establishing the position of the planter when the planter is tripped to start or stop planting seeds."[32]  ALMACO, however, raised this argument for the first time at oral argument.  By not including this argument in its brief, ALMACO has waived it.

With respect to the remaining claim limitations found within claims three and four through ten, the Court has reviewed SRES's claim chart and found that each limitation is disclosed within the HarvestMaster System.  Accordingly, the Court finds that claims three through ten are anticipated by the HarvestMaster System.

**B.     Public Use**

SRES contends that the use of the HarvestMaster System to plant Cargill's fields in the spring and summer of 1998 is an invalidating public use under section 102(b).  The public use bar under 35 U.S.C. § 102(b) arises when, before the critical date, the claimed invention is (1) in

---

[32]   '124 Patent, Doc. 1-2, p.7.

public use and (2) ready for patenting.[33]  The Court finds that SRES has met its burden for both of these elements.

1. The HarvestMaster System Was in Public Use.

Generally, public use includes " 'any use of the claimed invention by a person other than the inventor who was under no limitation, restriction or obligation of secrecy to the inventor.' "[34] An invention is in public use when it is (1) publicly accessible or (2) commercially exploited.[35] Here, SRES has not offered any evidence that the HarvestMaster System was commercially exploited.  Therefore, SRES must show that the HarvestMaster System was publicly accessible.

The Federal Circuit has identified several factors to determine whether an invention is publicly accessible, including:  evidence of experimentation, the nature of the activity that occurred in public, public access to the use, and confidentiality obligations imposed on observers.[36]  Despite these factors, the determination of whether there is a public use often turns on whether there was an expectation or assurance of confidentiality or steps taken to conceal the claimed invention.[37]  "For a method or system to be in 'public use' within the meaning of 35 U.S.C. § 102(a) or (b), the method or system must be used in the ordinary course of business without active efforts to conceal its operation."[38]  "Cases in which courts find that a prior use

---

[33]  *Invitrogen*, 424 F.3d at 1379.

[34]  *Petrolite Corp. v. Baker Fuse, Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) (citations omitted).

[35]  *Id*. at 1380.

[36]  *Id.*

[37]  *Dey, Inc. v. Sepracor, Inc.*, 847 F. Supp. 2d 541, 550 (S.D.N.Y. 2012); *see also Advanceme Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 608-09 (E.D. Tex. 2007) (collecting and comparing cases).

[38]  *Advanceme*, 509 F. Supp. 2d at 608-09 (citing *New Railhead Mfg. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1298-1300 (Fed. Cir. 2002) (finding that performance of the claimed method of drilling in rock at a commercial jobsite under public land, hidden from view, constituted public use); *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1570

was not a 'public use' within the meaning of 35 U.S.C. § 102 have found active concealment of the method or system by the prior user, typically by contractual agreements to maintain secrecy."[39]

When a party asserts prior public use based on the actions of a third party, section 102(b) is not a bar when the prior use is not available to the public.[40]  Indeed, "secret activity" by a third party who "elects to avoid the patent system" does not constitute public use.[41]

As evidence that the HarvestMaster System was publicly used, SRES offers two Declarations of Ron Campbell, who describes the HarvestMaster System and states that the HarvestMaster System was used to plant Cargill's fields in the spring and summer of 1998.  It also offers two videos taken in May 1998, which show a planter with a GPS and a computer program being used to plant Cargill's fields, and the Declaration of Timothy Butler, a Cargill employee, who describes what is occurring in the videos.  ALMACO contends that the planting system shown in the May 1998 videos is not the HarvestMaster System because neither Butler nor Campbell testified that the software used in the videos was Campbell's software.  The Court disagrees.  In connection with Campbell's May 16, 2011, Declaration, SRES produced a copy of

---

(Fed. Cir. 1997) (finding that the defendant's use of the high-level aspects of its computer reservation system was a prior public use of a means-plus-function claim for a computer system); *Baxter Int'l v. COBE Labs.*, 88 F.3d 1054 (Fed. Cir. 1996) (finding that a scientist's use of a machine implementing the claimed method in a laboratory at the National Institute of Health, without the public's awareness of the method employed by the machine, was a prior public use); *Elec. Battery Co. v. Shimadzu*, 307 U.S. 5, 20 (1939) ("The ordinary use of a machine or the practise [sic] of a process in a factory in the usual course of producing articles for commercial purposes is a public use")).

[39]   *Advanceme*, 509 F. Supp. 2d at 608-09. (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) (finding that company told all employees that the prior art machine was confidential and required them to sign confidentiality agreements, thus concealing the machine); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376 (Fed. Cir. 2007) (finding that the prior art user was required to sign a non-disclosure agreement related to the prior art, thus concealing the prior art)).

[40]   *Woodland Trust*, 148 F.3d at 1371.

[41]   *W.L Gore*, 721 F.2d at 1550.

-14-

Campbell's software.  This copy shows that the software is titled "Plantest."  A screenshot from the May 1998 videos also shows that the software program being run on the planter was titled "Plantest."  Therefore, the Court finds that Campbell's software was the software being used in the planting system shown in the May 1998 videos.

The Court finds that the use of the HarvestMaster System in May 1998 to plant Cargill's fields was publicly accessible, and thus, constitutes a public use under section 102(b).  A "public use" is *any use* of an invention by a person other than the inventor who is under no obligation of confidentiality or secrecy to the inventor.[42]   Here, there is no evidence that the planting performed in May 1998 was performed in secret or that HarvestMaster, Cargill, or Wintersteiger took steps to conceal the planting.  Campbell testified that his work to develop a research planter that used GSP signals to start and stop planting was known throughout the industry in 1997 and that his work was discussed between HarvestMaster, Cargill, Wintersteiger, and between the engineers and sales employees of these entities.  Furthermore, SRES's corroborating evidence shows that the May 1998 planting was not concealed from the public.[43]   Indeed, the fact that Leica created a brochure touting that Leica GPS was used to plant research fields and that Eckels gave a presentation touting use of the GPS in seed research planting shows that the planting was not conducted in secret.

---

[42]   *Petrolite*, 96 F.3d at 1425.

[43]   SRES relies on the Declaration of Rod Eckels, the Leica Brochure, an internal Cargill email, and a Cargill newsletter as corroborating evidence that the May 1998 planting was publicly available.  With respect to the Cargill email and newsletter (Docs. 142-10 and 147-4), the Court finds that these documents were not attached to and authenticated by an affidavit that conforms to Fed. R. Civ. P. 56(e), and therefore, SRES cannot use them in support of its motion for summary judgment.  *See Bell v. City of Topeka, Kan.*, 496 F. Supp. 2d 1182, 1184-85 (D. Kan. 2007) (discussing when unauthenticated documents may be used in support of a summary judgment motion).

ALMACO argues that there is a genuine issue of material fact regarding whether the May 1998 planting was a public use because (1) the May 1998 videos were designated "CONFIDENTIAL," (2) the May 1998 planting was conducted on private rather than public land, and (3) according to the Declaration of Brian Carr, ALMACO's Vice-President of Engineering and the named inventor of the '124 Patent, in his 31 years of working with seed research companies, confidentiality was expected when developing a new device or process and seed research planting was considered confidential.  These arguments are not persuasive.

First, the fact that the May 1998 videos were designated "CONFIDENTIAL" does not mean that the actual planting itself was confidential.  The videos are the intellectual property of Heiden, a Cargill employee, and it is his right to designate them "CONFIDENTIAL" if he does not want his intellectual property to be public.  Second, the fact that the May 1998 planting occurred on private land rather than public land is not dispositive that a public use did not occur. In fact, it is generally acknowledged that "a use is public even though it occurs in a factory or other area in which the general public is excluded."[44]  For example, in *Electric Storage Battery v. Shimadzu*,[45] "the ordinary use of a machine or the practice of a process in a factory in the usual course of producing articles for commercial purposes is a public use," at least absent evidence of active steps of concealment.[46]  And, third, the fact that Carr testified that seed research planting is typically confidential does not mean that the planting that occurred in Cargill's fields in May 1998 was confidential.

---

[44]   2-6 Chisum § 6.02(a).

[45]   307 U.S. 5 (1939).

[46]   *Id*. at 19-20.

Relying on *Bennet Regulator Guards, Inc. v. Canadian Meter Co., Inc.*,[47] ALMACO also argues that the HarvestMaster System was not publicly accessible because there is no evidence showing an enabling disclosure of the function and structure of the system was made.  The language ALMACO relies on in *Bennet* to make this argument was discussed in the context of a public knowledge claim under 35 U.S.C. § 102(a), which requires that the knowledge be publicly accessible *and* that it enable one with ordinary skill in the art to practice the invention.[48]  A section 102(b) claim does not require an enabling disclosure to be made.  In *Zenith Electronics Corp. v. PDI Communication Systems, Inc.*,[49] a case decided after *Bennet*, the Federal Circuit made clear that for a patent to be invalid under section 102(b) because of public use, "the public use itself need not be enabling."[50]  Rather, the Court "must simply determine whether the public use related to a device that embodied the invention."[51]  Accordingly, the language ALMACO relies on *Bennet* is not applicable to this case, and its argument fails.

SRES has shown that the use of the HarvestMaster System to plant Cargill's fields in May 1998 was publicly accessible.  Therefore, SRES has met the first prong of the public use test under section 102(b).

---

[47]   184 Fed. Appx. 977 (Fed. Cir. 2006).

[48]   *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).

[49]   522 F.3d 1348 (Fed. Cir. 2008).

[50]   *Id.* at 1356.

[51]   *Id.*

2.      The HarvestMaster System Was Ready for Patenting.

To prevail on its public use claim under section 102(b), SRES must also show that the HarvestMaster System was "ready for patenting."[52]  This condition may be shown "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."[53]  SRES offers the May 1998 videos, the May 16, 2011, Declaration of Ron Campbell, and the Wintersteiger Report as evidence that the HarvestMaster System was ready for patenting before November 1, 1998.  Because this evidence does not consist of drawings or other descriptions that enable a person skilled in the art to practice the invention, SRES must show that it meets the standard for proving "reduction to practice."

"Reduction to practice means an invention has been physically built and is known to work for its intended purpose."[54]  An invention works for its intended purpose "when there is a demonstration of the workability or utility of the claimed invention."[55]  An invention can be reduced to practice "even though it may be later refined or improved."[56]

ALMACO asserts that there is a genuine issue of material fact regarding whether the HarvestMaster System worked for its intended purpose in May 1998.  According to ALMACO, the purpose of the testing in May 1998 was to replace the planting cable, and the purpose of the

---

[52]   *Invitrogen*, 424 F.3d at 1379-80.

[53]   *Pfaff v. Wells Elecs*, 525 U.S. 55, 67-68 (1998).

[54]    *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002).

[55]   *Honeywell Int'l Inc. v. Univ. Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007).

[56]   *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1367 (Fed. Cir. 2008)

planting cable was to trip the planter so that the alleys between the plots would align within one inch.   ALMACO cites to several statements in the Wintersteiger Report arguing that the HarvestMaster System used in May 1998 did not operate to create alleys that were aligned within one inch.  For example, the Wintersteiger Report states that (1) there is a stagger in the alleys; (2) at one point the MC1000 (the GPS) stopped functioning, and they were required to use the cable; and (3) at certain times, the program would send out double signals resulting in double trips.

The Court finds that SRES has met its burden to show that the HarvetMaster System was reduced to practice.  Both Campbell's Declarations and the Wintersteiger Report state that the HarvestMaster System was successfully used to plant Cargill's fields in the spring of 1998. ALMACO's narrow position that the HarvestMaster System was only "workable" if the alleys aligned within one inch is not supported by the '124 Patent.  Nothing in the '124 Patent requires the alleys to align with any specific degree of accuracy.  Furthermore, the Wintersteiger Report states that the alleys aligned within two to three inches.  ALMACO also fails to point out that with respect to the functioning of the MC1000, the Wintersteiger Report states that the MC1000 stopped functioning because of an internal error within the MC1000.   Therefore, the malfunctioning was an error in the GPS itself, not in the operation of the HarvestMaster System.

ALMACO also asserts that the HarvestMaster System was not complete before the critical date because the Leica brochure stated that Cargill was still in the testing phase and the Declaration of Timothy Butler states that he revised the user interface after the May 1998 planting.  The Court finds these arguments unpersuasive.  The Federal Circuit has held that "it is improper to conclude that an invention is not reduced to practice merely because further testing

is being conducted."[57]   And an invention may be further refined after it has been reduced to practice.[58]   The mere fact that Cargill may still have been testing the System or that the user interface was revised does not mean the HarvestMaster System did not work for its intended purpose in the spring of 1998.   The undisputed facts show that the HarvestMaster System was used to successfully plant Cargill's fields in the spring of 1998.   Therefore, the Court finds that the ready for patenting prong of the public use test under section 102(b) has been satisfied.

SRES has shown by clear and convincing evidence that the HarvestMaster System was publicly accessible and ready for patenting.   Accordingly, the Court finds that SRES has met its burden to show that the HarvestMaster System was in "public use" as that term is used in 35 U.S.C. § 102(b).   Because SRES has also shown that the HarvestMaster System anticipates claims three through ten of the '124 Patent, the Court finds that these claims are invalid under the public use bar of 35 U.S.C. § 102(b).

### C.      Offer for Sale

SRES contends that claims one and claims three through ten are also invalid under section 102(b) through the alleged offer for sale of the HarvestMaster System by Ron Campbell to Cargill in 1997.   As previously discussed, to prevail on its on-sale bar claim, SRES must first show that the HarvestMaster System anticipates the '124 Patent.[59]   Because SRES has failed to show anticipation of claim one of the '124 Patent, SRES's contention that this claim is invalid through the on-sale bar fails.   The Court declines to address SRES's contentions with respect to

---

[57]   *Id.*

[58]   *Id.*

[59]   *Dana Corp.*, 279 F.3d at 1376.

claims three through ten of the '124 Patent because it has already found that claims three through ten are invalid under the public use bar of 35 U.S.C. § 102(b).

### IV.    CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the arguments are moot or without merit.  With respect to claim one of the '124 Patent, the Court finds that SRES has not shown that all of the limitations of claim one were anticipated by the HarvestMaster System, and therefore denies SRES's motion for summary judgment with respect to this claim.  With respect to claims three through ten, the Court finds that all of the claim limitations were anticipated by the HarvestMaster System and that the HarvestMaster System was in public use under 35 U.S.C. § 102(b).  The Court therefore grants SRES's motion for summary judgment with respect to claims three through ten.

**IT IS ACCORDINGLY ORDERED** this 20th day of December, 2012, that Plaintiff, Seed Research Equipment Solutions, LLC's Motion for Summary Judgment Due to the Invalidity of the Patent-In-Suit under 35 U.S.C. § 102(b) (Doc. 142) is hereby denied with respect to claim one of the '124 Patent and hereby granted with respect to claims three through ten of the '124 Patent.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE